UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEPHEN WELCH                                                                                    PLAINTIFF

VS.                                                                          CIVIL ACTION NO. 3:11-cv-668-FKB

AMERICAN HOME ASSURANCE COMPANY;
and AIG DOMESTIC CLAIMS, INC.                                                                  DEFENDANTS

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

This case is before the Court on a motion to determine a Medicare Set Aside [Docket No. 26] and a supplement [Docket No. 32] filed in support. By consent of the parties [Docket No. 29], this case has been referred to the undersigned pursuant to 28 U.S.C. § 636(c). *See* Docket No. 30. After considering the instant motion and supplement, the extensive documentation submitted in support of the motion, and the documents and testimony introduced into evidence during two (2) hearings held on the motion, the Court makes the findings of fact and conclusions of law and orders as set forth below.

**Procedural Background**

On January 9, 2013, the undersigned conducted a settlement conference with the parties. At the settlement conference, the parties negotiated a global settlement agreement resolving all issues in this action, as well as all remaining issues in a related Mississippi Workers' Compensation Commission (MWCC) case between the parties. One of the terms and conditions of the parties' global settlement is that this Court determine a Medicare Set Aside (MSA) such that the parties may comply with the provisions of the Medicare Secondary Payer Act, 22 U.S.C. § 1395y(b)(2) and related federal regulations. To that end, Defendants filed the instant motion.

In the instant motion, Defendants request that the Court determine the necessity of an

MSA and the amount of an MSA, if any. Defendants also request an order requiring that the Court-determined MSA amount be set aside from the global settlement proceeds and deposited into an interest-bearing account to be self-administered by Stephen Welch for the sole purpose of paying his future medical expenses related to his injuries from the underlying work-related accident. Further, the parties request that the order declare that the interests of Medicare have been reasonably considered and protected by all parties through the MSA ordered by this Court.

The Court set this matter for an evidentiary hearing and ordered service to be made by the Clerk of this Court on the United States Attorney's Office for the Southern District of Mississippi. Docket No. 28. By letter dated February 4, 2013, the U. S. Attorney's Office advised that the United States would not have a representative at the hearing. Docket No. 33-1. As a reason for not appearing, the letter states that "the United States Department of Health and Human Services (DHHS) is not a party to this action and there has been no waiver of sovereign immunity on its behalf." *Id*. at 3. The letter also states:

> The Centers for Medicare & Medicaid Services (CMS) does not review or verify counsel's determination of whether a settlement, judgment or award included a recovery for future medical services or counsel's proposal regarding the amount to be set-aside to protect the Medicare Trust Fund, except under limited circumstances. In the present case, based on the limited information available in the complaint and relevant pleadings, CMS cannot determine whether it would review the parties' determination of whether a set aside is needed or the amount of the set-aside with respect to the liability settlement.[1] Nevertheless, the settlement funds should be exhausted on otherwise reimbursable services related to what was claimed and/or released before Medicare is billed for future medical services.

Docket No. 33-1 at 3-4.

---

[1] In footnote 2, the letter states, "Plaintiff has not provided the amount of the alleged combined Worker's Compensation/Bad Faith claim settlement, the amount of the proposed Medicare Set Aside, or the expected date on which the Plaintiff will enroll in the Medicare program." Docket No. 33-1 at 3.

On February 5, 2013, the Court held a hearing on the instant motion. Plaintiff Stephen Welch testified at the hearing. In addition, the parties introduced into evidence extensive documentary evidence which is more specifically identified below. Included in the documentary evidence admitted at the February 5, 2013, hearing were letters from Plaintiff's primary treating physician, Howard T. Katz, M.D., in which he sets forth Plaintiff's anticipated future medical needs and their related costs [Docket Nos. 32-17 and 32-18] and an affidavit from Karen Shelton, RN, CNLCP, addressing the CMS approval rates for Plaintiff's anticipated future medical needs and what is not covered by Medicare. Docket No. 33-2.

On February 6, 2013, the Court held a telephone conference with counsel for the parties. In the conference, the undersigned advised counsel that, prior to any ruling on the instant motion, Dr. Katz and Nurse Shelton would need to appear, testify, and be available for examination. On February 7, 2013, the Court entered an order setting this matter for an additional hearing to be held on February 21, 2013, and ordered service of the February 7 order to be made by the Clerk of this Court on the United States Attorney's Office for the Southern District of Mississippi. Docket No. 34.

On February 21, 2013, the Court held an additional hearing on the instant motion. Although the docket shows that the Clerk of this Court provided the February 7 order to the U. S. Attorney's Office, the Court received no further response from the United States on this matter. The evidence introduced at the February 5 and February 21 hearings is addressed below.

**Factual Background**

On March 7, 2007, Plaintiff Stephen Welch injured his left elbow in the course and scope of his employment with J. K. Builders, Inc., when he was attempting to lift a wooden board.

3

Originally, Welch submitted a claim to his health insurance carrier, but after his health insurance carrier denied payment on the basis that his elbow injury was work-related, Welch filed a claim with his employer. The claim was reported to J. K. Builders, Inc.'s workers' compensation insurance carrier, American Home Assurance Company, and a first report of injury was prepared on or about April 23, 2007.

American Home denied compensability of Welch's claim based on a March 19, 2007, medical report of Dr. Howard Clark. In his report, Dr. Clark indicated that Welch was suffering from symptoms of an acute left elbow strain prior to the date of his on-the-job injury.

Welch subsequently filed a Petition to Controvert before the MWCC on November 9, 2007. The employer and carrier filed an Answer denying liability. After discovery was compelled and provided from Welch, the employer and carrier amended their Answer. Subsequently, on October 18, 2008, a MWCC Administrative Law Judge ordered that Welch be provided reasonable, necessary and related medical treatment and temporary disability benefits, and American Home subsequently paid temporary total disability benefits and medical benefits. Additional MWCC orders were entered related to certain administrative penalties and interest.

On May 9, 2012, Welch and his employer and carrier entered into an MWCC-approved settlement of all wage loss benefits. That settlement (referred to as a "13(j)" settlement) left open Welch's claim for ongoing reasonable, necessary and related medical benefits.[2]

On October 27, 2011, Welch filed this action in this Court seeking recovery for alleged improprieties and bad faith because his MWCC claim had been denied and for the manner in

---

[2] As all wage loss payments under the Mississippi Workers' Compensation Act have been previously paid by American Home, the Court makes (and need make) no allocation for unpaid wage loss benefits.

which his MWCC claim had been adjusted. In this case, Welch seeks actual, compensatory, consequential and punitive damages.

Important to the instant motion, Plaintiff claims that Defendants' denial and delay of his MWCC claim substantially worsened his medical condition. Specifically, Plaintiff claims that, if his claim had initially been accepted as compensable, his elbow injury would have been temporary in nature, but that, due to the denial and delay of his MWCC claim, his condition of Complex Regional Pain Syndrome (CRPS) of his left upper extremity progressed to Stage III, resulting in permanent damage which necessitates present and future medical treatment and costs.[3] Accordingly, Plaintiff alleges that the denial and delay of his MWCC claim proximately caused his present and permanent condition and resulting mental, physical and emotional pain and suffering and medical treatment. Based on these claims, Plaintiff contends that he is entitled to recover in this case an award of all future medical expenses related to his condition under Mississippi tort liability law without the limitations of what may be afforded under the MWCC Medical Fee Schedule. Defendants disagree with these contentions.

Defendants also contest whether the medical expenses previously paid by American Home were reasonable, necessary and/or causally connected, and there is no evidence before the Court from any MWCC order that any specific treatment met this criteria. The parties continue to dispute whether the present and projected future medical expenses of Welch are reasonable, necessary and/or causally related to his work-related incident of March 7, 2007. The parties further disagree on many additional points, including the standard for liability in a workers'

---

[3] Citing the National Institute of Neurological Disorders and Stroke under the National Institutes of Health, Dr. Katz stated in a September 4, 2012, report that "Stage I [of CRPS] is thought to last from 1 to 3 months[;] . . . Stage II lasts 3 to 6 months . . . [;] . . . and [S]tage III progresses to the point where changes in the skin and bone are no longer reversible." Docket No. 32-16 at 16.

5

compensation bad faith case, standards regarding the imposition and/or availability of consequential damages and/or punitive damages, and numerous facts regarding the merits of the underlying workers' compensation claim, Welch's injuries, and/or what, if any, damages might be recoverable in this action.

It was in the above-described context that the parties appeared before the undersigned in a settlement conference on January 9, 2013. Due to the interrelationship of the underlying and ongoing workers' compensation claim for medical benefits and the claim for damages in this bad faith action, the parties were only able to resolve their differences through a global and confidential settlement agreement in which all claims of Plaintiff against American Home were resolved - including any and all claims for future medical benefits under the Mississippi Workers Compensation Act and/or under Mississippi tort liability law in this action.

At the January 9, 2013, settlement conference before the undersigned, Plaintiff's counsel used an October 10, 2012, report from Welch's primary treating physician, Dr. Katz, in which Dr. Katz estimated Welch's total anticipated future medical costs related to his March 7, 2007, elbow injury to be $456,657.35. Docket No. 32-18 at 5. Dr. Katz based his October 10 report on a September 10, 2012, Special Report, in which Dr. Katz documented Welch's anticipated future medical needs related "to his dominant left upper extremity's complex regional pain syndrome and a work-related accident, March 7, 2007." Docket No. 32-17 at 4. In a September 4, 2012, Special Report, Dr. Katz gave an opinion that, "[b]ased to a reasonable degree of medical certainty, the delays in diagnosis and treatment of Mr. Welch's complex regional pain syndrome in his left upper extremity have allowed his condition to degenerate," and Dr. Katz stated that Welch "is now in stage III complex regional pain syndrome with poor prognosis." Docket No.

32-16 at 16.

The reports of Dr. Katz from September 4, September 10, and October 10, 2012, had been produced by Plaintiff to Defendants prior to the January 9 settlement conference. Defendants relied on the representations contained in these reports, including Dr. Katz's $456,657.35 estimate of Welch's anticipated future medical costs, in reaching the global compromised settlement between the parties on January 9, 2013.

**Evidence Introduced at the Hearings**

At the February 5, 2013, hearing on this matter, the Court introduced into evidence the February 4, 2013, letter from the United States Attorney's Office. Docket No. 33-1. Plaintiff Stephen Welch testified at the February 5 hearing, and Plaintiff also introduced into evidence the Affidavit of Karen Shelton, RN, CNLCP, along with a copy of her curriculim vitae and MSA proposal. Docket No. 33-2. Defendants introduced into evidence the following documents at the February 5 hearing: (1) Excerpts from Welch's MWCC file [Docket No. 32-1]; (2) Excerpts of Welch's records from the following medical care providers: (a) Capital Orthopaedic and Sports Medicine Center [Docket No. 32-3]; (b) Dr. Guy T. Vise, Jr. [Docket No. 32-4]; (c) Dr. J. Randall Ramsey [Docket No. 32-5]; (d) Dr. Jeffrey T. Laseter [Docket No. 32-6]; (e) Dr. Rahul Vohra [Docket No. 32-7]; (f) Southern Physical Medicine and Rehabilitation [Docket No. 32-8]; (g) Dr. William Geissler [Docket No. 32-9]; (h) Dr. Howard Clark [Docket No. 32-10]; (i) Dr. Howard Katz [Docket No. 32-11]; (j) Dr. Bill Lawrence [Docket No. 32-12]; (k) Dr. Alan Moore [Docket No. 32-13]; (l) Dr. Carroll McLeod [Docket No. 32-14]; and (m) River Oaks Hospital [Docket No. 32-15]; (3) Dr. Katz's Special Report of September 4, 2012 [Docket No. 32-16]; (4) Dr. Katz's Special Report of September 10, 2012 [Docket No. 32-17]; (5) Dr. Katz's Estimated

7

Costs of Anticipated Future Medical Needs, dated October 10, 2012 [Docket No. 32-18]; (6) Excerpts from Welch's Social Security Administration application documents [Docket No. 32-19]; (7) Affidavit of Janet R. Kearney [Docket No. 32-20]; (8) Findings of Fact, Conclusions of Law, and Order in *Warren Frank v. Gateway Insurance Company, et.al* [Docket No. 32-21]; and (9) Findings of Fact, Conclusions of Law, and Order in *Robert Schexnayder v. Scottsdale Insurance Company*, including 7/6/11 letter of U.S. Attorney's Office to Court and 5/25/11 HHS, Region VI handout [Docket No. 32-22].

At the February 21, 2013, hearing, Welch's primary treating physician, Dr. Katz, appeared in person and testified. After Plaintiff counsel's examination of Dr. Katz as to his qualifications and experience, the Court conducted its own *voir dire* of Dr. Katz. The Court accepted Dr. Katz as an expert in the field of physical medicine and rehabilitation and as an expert qualified to estimate the anticipated future medical costs of Plaintiff.

Dr. Katz testified that his estimate of the costs of Welch's anticipated future medical needs related to his March 7, 2007, work-related injury totals $456,657.35, as outlined in his October 10, 2012, report. As Dr. Katz explained, his estimate is based on Welch's anticipated future medical needs which he set forth in his September 10, 2012, Special Report. As sources to determine the costs of Welch's anticipated future medical needs, Dr. Katz used the following: for medical treatment, the American Medical Association's *Physicians' Fee Reference, 2012* (50th percentile national values); for psychological needs, the prices of Pam Cameron, MSW; for the electronics, the surgeries related to the electronics, and everything related to Welch's spinal cord stimulator, information from Medtronics; and for medications and supplies, information from goodrx.com, onlinemedicalsupply.com, and absolutemedical.net. Dr. Katz determined Welch's

life expectancy to be 38.6 years, based on the United States Life Tables, 2006, published by the U. S. Department of Health and Human Services, Center for Disease Control and Prevention, National Center for Health Statistics, National Vital Statistic Systems, published June 28, 2010. Although Dr. Katz states in his September 10 and October 10 reports that his opinions are based on a reasonable degree of medical certainty, Dr. Katz testified at the February 21 hearing that his estimate includes all costs of Welch's anticipated future medical needs related to his March 7, 2007, work-related injury which are reasonably foreseeable.

Karen Shelton, RN, CNLCP appeared by telephone from Charleston, South Carolina and also testified at the February 21 hearing. After Plaintiff counsel's examination of Nurse Shelton as to her qualifications and experience, the Court also conducted its own *voir dire* of Nurse Shelton. The Court accepted Nurse Shelton as an expert in the fields of Life Care Planning and Medicare/CMS coverage and rates.

Nurse Shelton testified that she had conducted an analysis of the costs set forth in Dr. Katz's October 10 report and reduced them to those covered by Medicare. Nurse Shelton testified that the following items on Dr. Katz's report are not covered by Medicare: elevated commode seat, long handed shower hose, grab bars, kitchen utensils, custom compression gloves/sleeves, equipment evaluation by physical therapist, equipment evaluation by occupational therapist, re-evaluation of exercise program by physical therapist, re-evaluation of exercise program by occupational therapist, recreational therapy, and the following medications: Klonopin, Ativan, Fosamax, and Cialis. In addition to deducting the items not covered by Medicare, Nurse Shelton also reduced market rates used by Dr. Katz to CMS approval rates. However, with respect to Welch's spinal cord stimulator, Nurse Shelton testified that, based on a

9

CMS memo, she applied a CMS approval rate of $28,996.00, which is actually $8,312.00 higher than the $20,684.00 replacement cost used by Dr. Katz. Using the same source as Dr. Katz, Nurse Shelton also determined Welch's life expectancy to be 38.6 years. Analyzing Dr. Katz's report based on Medicare/CMS coverage and rates, Nurse Shelton testified that, if an MSA is required for Welch's future medical expenses related to his March 7, 2007, work-related injury, a total of $148,888.50 would need to be set aside for medical care and $25,874.35 for prescriptions thereby resulting in a total MSA of $174,762.85.

Plaintiff Stephen Welch also testified at the February 21 hearing. Welch testified that he has never received any Medicare benefits or Social Security disability benefits. Although Welch has applied for Social Security benefits, his initial application was denied. In January, 2013, Welch had a hearing before a Social Security Administrative Law Judge (ALJ) and was still awaiting a ruling from the ALJ at the time of the February 21 hearing before this Court. He testified that he understood that, if this Court ordered an MSA in this matter, the MSA amount must be taken from the settlement proceeds paid by Defendants and placed into an interest-bearing account; the MSA funds could be used solely to pay for medical treatment and services related to his injuries claimed in his MWCC case and this case; and he must keep an accurate accounting and the records showing that the MSA account funds had been used solely to pay his medical costs related to the injuries claimed in his MWCC case and this case.

**Findings of Fact**

Based on the pleadings, instant motion and supplement, and the testimonial and documentary evidence submitted in this matter, the Court makes the following findings of fact:

1. Welch injured his left elbow in the course and scope of his employment with J. K.

Builders, Inc. on March 7, 2007. J. K. Builders, Inc.'s workers' compensation insurance carrier at that time was American Home Assurance Company.

2.  Welch filed a MWCC claim against his employer and its carrier, American Home, in relation to his March 7, 2007, elbow injury. Welch contends that, if Defendants had timely accepted as compensable and paid his MWCC claim, his March 7, 2007, injury would have been temporary in nature and would not have necessitated present and future medical treatment and costs. But, Welch contends that, due to Defendants' denial and delay of his MWCC claim, his elbow injury progressed to the condition of Complex Regional Pain Syndrome (CRPS), Stage III, thereby necessitating present and future medical treatment and costs.

3.  Welch's primary treating physician, Dr. Katz, estimates the costs of Welch's anticipated future medical needs related to his March 7, 2007, injury to be $456,657.35. Nurse Shelton, Plaintiff's own expert, used the word, "generous," when testifying about Dr. Katz's estimate. Defendants dispute whether all of the medical needs and/or costs projected by Dr. Katz are reasonable, necessary and/or causally related to the work-related incident of March 7, 2007. The Court finds that the reasonably foreseeable future medical needs and costs related to Welch's March 7, 2007, injury would not exceed $456,657.35.

4.  The Court finds Nurse Shelton's testimony as to what is not covered by Medicare credible and reliable. Using the costs assigned by Dr. Katz in his estimate of Welch's anticipated future medical needs, the items which Nurse Shelton testified were not covered by Medicare total $211,886.27. However, when the $8,312.00 difference between Dr. Katz's and Nurse Shelton's assigned costs for Welch's spinal cord stimulator is multiplied by 4 (which is the number of times Dr. Katz found the spinal cord stimulator should be replaced over Welch's life

expectancy) and subtracted from $211,886.27, the resulting adjusted amount of $178,638.27 represents the amount of Dr. Katz's estimate not covered by Medicare plus the higher CMS approval rate for Welch's spinal cord stimulator. After deducting $178,638.27 from Dr. Katz's estimate of $456,657.35, the resulting amount of $278,019.08 represents Welch's total future Medicare-covered items and services based on Dr. Katz's estimate.[4] The Court finds that this amount adequately protects Medicare's interests and should be available to provide funding for Welch's future medical items and services related to the injuries he claimed in his MWCC case and in this lawsuit that would otherwise be covered or reimbursable by Medicare.

5. Welch is not currently a Medicare beneficiary and has never submitted any medical expenses related to his March 7, 2012, injury to Medicare for payment. However, he has applied for Social Security Disability Benefits and is presently appealing the initial denial of his claim. On January 9, 2013, the parties reached a settlement agreement which included settlement of Welch's claims for all future medical expenses related to his March 7, 2007, injury. Also in January, 2013, Welch had a hearing before a Social Security ALJ in pursuit of Social Security Disability Benefits. As Nurse Shelton testified, there is a 24-month waiting period to start receiving Medicare benefits after being accepted for Social Security benefits. Therefore, CMS would likely consider Welch a claimant reasonably expected to become a Medicare beneficiary within 30 months of the settlement date.

6. As a condition of the global settlement reached by the parties on January 9, 2013,

---

[4] The Court acknowledges that Nurse Shelton further reduced Dr. Katz's estimate by applying the CMS approval rate to the Medicare-covered items on Dr. Katz's report, resulting in her proposed MSA of $174,762.85, and she testified that this amount would be an acceptable MSA to CMS for this settlement. Although $174,762.85 may be accepted by CMS as an appropriate and sufficient MSA if submitted to CMS for approval, the Court is unwilling to use that amount in a Court-determined MSA.

Welch agreed to this Court determining an MSA to protect Medicare's interests under the Medicare Secondary Payer Act (MSP), 22 U.S.C. § 1395y(b)(2). Welch understands that the MSA determined by this Court must be set aside from the settlement proceeds paid by Defendants and placed into an interest-bearing account, the MSA funds can be used solely to pay for medical treatment and services related to his injuries claimed in his MWCC case and this case, and he must keep an accurate accounting of the MSA account funds and records showing that the MSA account funds have been used solely to pay his medical costs related to the injuries claimed in his MWCC case and this case. Welch is not cognitively impaired and is capable of administering any funds placed in an MSA account.

      7.      Although CMS has a procedure for review and approval of MSAs in the settlement of workers' compensation cases, "CMS does not currently have a policy or procedure in effect for reviewing or providing an opinion regarding the adequacy of the future medical aspect of a liability settlement or recovery of future medical expenses incurred in liability cases." *Warren Frank v. Gateway Ins. Co.*, Civil Action No. 6:11-0121 (W.D. La. March 13, 2012); *Robert Schexnayder, et ux. v. Scottsdale Ins. Co.*, Civil Action No. 6:09-cv-1390 (W.D. La. July 28, 2011); *Big R Towing, Inc. V. Benoit*, Civil Action No. 10-538 (W.D. La. January 5, 2011). The settlement before this Court involves both - the settlement of a workers' compensation case and settlement of a liability case. But, if Welch prevails on his theory of recovery in this case, he would be awarded his future medical expenses related to his March 7, 2007, injury under Mississippi tort liability law and would not be recovering those future medical expenses pursuant to his claim under the Mississippi Workers' Compensation Act. Therefore, it is unclear whether the settlement before this Court should be viewed as a workers' compensation MSA for which

13

there is a CMS approval process or a liability MSA for which there is no CMS approval process. Regardless, a serious dispute exists between the parties as to whether the anticipated future medical needs opined by Dr. Katz for Welch are reasonable, necessary and/or causally related to the March 7, 2007, incident or recoverable under the Mississippi Workers' Compensation Act or Mississippi tort liability law.

8. By Order of this Court, the United States received notice of both hearings in this matter, but declined the invitation to appear and/or participate in any way.

### Conclusions of Law

Based on the procedural and factual background, evidence submitted, and findings of fact set forth above, the Court makes the following conclusions of law:

1. This Court has jurisdiction over this case based on 28 U.S.C. § 1332. Jurisdiction exists to decide the instant motion under 28 U.S.C. § 2201 in that there is an actual controversy and the parties seek a declaration of their rights and obligations in order to comply with the MSP and its related regulations in the context of the settlement of this case involving the settlement of liability claims for which there is no procedure in place by CMS. Other courts have determined the rights and obligations of settling parties under the MSP with respect to MSAs. *See, e.g., Warren Frank v. Gateway Ins. Co.*, Civil Action No. 6:11-0121 (W.D. La. March 13, 2012); *Robert Schexnayder, et ux. v. Scottsdale Ins. Co.*, Civil Action No. 6:09-cv-1390 (W.D. La. July 28, 2011); *Big R Towing, Inc. V. Benoit*, Civil Action No. 10-538 (W.D. La. January 5, 2011); *see also Bradley v. Sebelius*, 621 F. 3d 1330 (11th Cir. 2010) (determining settling parties' obligations and Medicare's rights under MSP with respect to allocation of settlement proceeds). Since CMS provides no procedure for determining the adequacy of protecting Medicare's interests for future medical needs and/or expenses in the settlement of the case pending before

this Court and considering the strong public policy interest in resolving lawsuits through settlement, *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 215, (1994), the Court finds it necessary and appropriate to decide the instant motion.

2. Medicare may obtain secondary payer status under the MSP if payment has been made, or can reasonably be expected to be made, under a workers' compensation law of a State or under an automobile or liability insurance policy, both of which are defined in the statute as a "primary plan." 42 U.S.C. § 1395y(b)(2)(A)(ii). A primary plan's responsibility for payment can be determined by judgment or settlement. 42 U.S.C. § 1395y(b)(2)(B)(ii), 42 C.F.R. § 411.22(b)(1-3).

3. By the terms and conditions of the settlement of his MWCC claim and liability claim asserted in this Court and his receipt of the settlement funds, Welch has or will become an "entity who received payment from a primary plan." Welch is, therefore, responsible as a primary payer for future medical items or services related to his injuries claimed in his MWCC case and this lawsuit which would otherwise be covered by Medicare in the amount of $278,019.08. To the extent Welch incurs costs in the future for medical items or services related to his injuries claimed in his MWCC case and/or this lawsuit which would otherwise be covered by Medicare, Medicare shall not be billed for those items or services until the funds received by Welch for that purpose through the settlement are exhausted.

4. Welch is obligated to reimburse Medicare for all conditional payments made by Medicare prior to the time of the settlement and for all medical expenses submitted to Medicare prior to the date of this Order, even if such conditional payments are asserted by Medicare subsequent to the effective date of this Order.

5. The sum of $278,019.08 to be used by Welch out of the settlement proceeds to

pay for future medical items and services that would be otherwise covered by Medicare reasonably and fairly takes Medicare's interests into account in that the figures are based on reasonably foreseeable medical needs (as opposed to the more stringent standard of proof required by the substantive law that would be applicable if this case were tried on the merits in this Court), based on the most recent information from Welch's primary treating physician, and applying costs that, based on the testimony of the Medicare expert in this matter, are higher than what would be acceptable to CMS.

6. The Court finds that Medicare's interests are adequately protected (and, in fact, are more than adequately protected) in this settlement within the meaning of the MSP through the MSA determined and established by this Order.

IT IS, THEREFORE, ORDERED:

The motion [Docket No. 26] and supplement [Docket No. 32] are hereby GRANTED. It is further ordered that:

1. To the extent that Welch receives confirmation from Medicare of any conditional payments made by Medicare for services provided prior to the date of this Order, Welch shall promptly reimburse Medicare for such conditional payments;

2. Welch shall provide funding of $278,019.08 out of the settlement proceeds for payment of future medical items and services related to injuries claimed in his MWCC case and/or this lawsuit which would otherwise be covered by Medicare.

3. The sum of $278,019.08 shall be deposited into an interest-bearing account, which

shall be self-administered by Plaintiff Stephen Welch for the sole purpose of paying any future medical items or services related to the injuries Welch claimed in his MWCC case and/or this

lawsuit which would otherwise be covered or reimbursable by Medicare.

    4.      To the extent the parties request any further relief, it is denied.

SO ORDERED on the 26th day of February, 2013.

                                              /s/ F. Keith Ball
                                      UNITED STATES MAGISTRATE JUDGE